[Cite as *McClendon v. Ohio Dept. of Edn.*, 2017-Ohio-187.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104292**

# EDWINA L. McCLENDON

PLAINTIFF-APPELLANT

vs.

# OHIO DEPARTMENT OF EDUCATION

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-836901

**BEFORE:** Keough, A.J., Blackmon, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** January 19, 2017

**ATTORNEY FOR APPELLANT**

Patrick D. Riley
Riley, Resar & Associates, P.L.L.
520 Broadway Ave., Suite 200
Lorain, Ohio 44052


**ATTORNEYS FOR APPELLEE**

Mike DeWine
Ohio Attorney General
By: Reid T. Caryer
Assistant Attorney General
30 East Broad Street, 16th Floor
Columbus, Ohio 43215

KATHLEEN ANN KEOUGH, A.J.:

**{¶1}** Edwina L. McClendon ("McClendon") appeals the judgment of the trial court that affirmed the decision of the Ohio State Board of Education (the "Board") to permanently revoke McClendon's kindergarten through elementary teaching certificate. Finding no merit to the appeal, we affirm.

## I. Background

**{¶2}** On December 12, 2013, the Ohio Department of Education (the "Department"), on behalf of the Board,[1] sent McClendon a notice of opportunity for hearing ("notice") by certified mail, return receipt requested. The notice informed McClendon that the Board intended to determine whether to limit, suspend, revoke, or permanently revoke her teaching certificate in light of an allegation that she failed to provide appropriate supervision of a five-year-old kindergarten student (hereinafter referred to a "Student 1") on May 16, 2012, in violation of R.C. 3319.31(B)(1).[2]

**{¶3}** The letter notified McClendon of her right to request a hearing, stating: "[p]ursuant to Chapter 119 of the Ohio Revised Code, you are hereby advised that you are entitled to a hearing in this matter. If you wish to request such hearing, the request must be made in writing and must be received in the offices of the Ohio Department of

---

[1] The Department of Education consists of the Board, the superintendent of the Department, and a staff member. R.C. 3301.13.

[2] Under R.C. 3319.31(B)(1), the Board may suspend, revoke, or limit a license for "incompetence, negligence, or conduct that is unbecoming to the person's position."

Education within thirty days of the date of mailing of this notice." The letter further notified McClendon that should she fail to request a hearing, pursuant to Ohio Adm. Code 3301-73-05, the Department could proceed with a hearing in her absence.

{¶4} On January 16, 2014, 35 days after the date of the notice letter, the Board received a letter from McClendon requesting a hearing. The Board subsequently informed McClendon that her request would not be honored because her request was not timely.

{¶5} Thereafter, the Board proceeded with a hearing in McClendon's absence. Following the hearing, the hearing officer rendered a report and recommendation wherein she concluded that McClendon had failed to appropriately supervise Student 1, and that McClendon's failure to do so had resulted in Student 1 leaving school property and walking alone in the community. The hearing officer found that McClendon's conduct was conduct unbecoming to her position as an educator, and recommended permanent revocation of McClendon's education license based on the nature and seriousness of her conduct.

{¶6} As permitted by R.C. 119.09, McClendon filed objections to the hearing officer's report. The Board considered the hearing officer's report and McClendon's objections at its November 11, 2014 meeting. The Board agreed with the hearing officer's report and recommendation, and adopted a resolution finding that McClendon's failure to appropriately supervise Student 1 violated R.C. 3319.31(B)(1). The Board

revoked McClendon's educator license and ordered that she be permanently ineligible to apply for any license issued by the Board.

{¶7} McClendon thereafter appealed the Board's decision to the common pleas court pursuant to R.C. 119.12. The common pleas court affirmed the Board's decision, and this appeal followed.

## II. Law and Analysis

### A. Standard of Review

{¶8} In an administrative appeal under R.C. 119.12, a trial court must affirm the agency's decision if it is supported by reliable, probative and substantial evidence, and is in accordance with the law. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993); *In re Williams*, 60 Ohio St.3d 85, 86, 573 N.E.2d 638 (1993).

{¶9} In reviewing the lower court's decision as to the evidentiary basis for the agency's order, appellate review is limited to whether the trial court abused its discretion in rendering its decision. *Pons* at 621. An abuse of discretion occurs when the court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). With respect to purely legal questions, such as the construction of a statute or constitutional provision, we exercise de novo review. *Haynan v. Ohio State Bd. of Edn.*, 6th Dist. Lucas No. L-1101100, 2011-Ohio-6499, ¶ 9, citing *Washington Cty. Home v. Ohio Dept. of Health*, 178 Ohio App.3d 78, 2008-Ohio-4342, 896 N.E.2d 1011, ¶ 25 (4th Dist.).

### B. Due Process

**{¶10}** Due process requires that a governmental agency afford an individual reasonable notice and an opportunity to be heard prior to taking any administrative action that deprives an individual of his liberty or property. *Donn v. Ohio Civ. Rights Comm.*, 68 Ohio App.3d 561, 565, 589 N.E.2d 110 (8th Dist.1991), citing *State ex rel. Great Lakes College, Inc. v. Ohio State Med. Bd.*, 29 Ohio St.2d 198, 280 N.E.2d 900 (1972).

**{¶11}** In her second assignment of error, McClendon asserts that the Board's December 12, 2013 notice was constitutionally inadequate because it did not adequately inform her of what she needed to do to request a hearing. In addition, she contends that she was wrongly denied participation in the hearing because she made timely written and oral requests for a hearing, and because the Board has discretion whether to strictly enforce the requirement that it must receive any hearing request within 30 days of the date of mailing of the notice. We consider this assignment of error first because a denial of due process would be dispositive of McClendon's appeal.

**{¶12}** Proceedings before the Department are governed by R.C. Chapter 119, the Ohio Administrative Procedure Act. R.C. 119.07 stipulates what information must be included in an administrative agency's notice:

> Except when a statute prescribes a notice and the persons to whom it shall be given, in all cases in which section 119.06 of the Revised Code requires an agency to afford an opportunity for a hearing prior to the issuance of an order, the agency shall give notice to the party informing him of his right to a hearing. Notice shall be given by registered mail, return receipt requested, and shall include the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that he is entitled to a hearing if he requests it within thirty days of the time of mailing the notice.

**{¶13}** Here, the notice provided by the Department to McClendon, sent by certified mail, return receipt requested, apprised McClendon of the reasons for the action against her and informed her of the law involved. In addition, the notice informed McClendon that she was entitled to a hearing and how to request such a hearing. Specifically, the notice stated:

> Pursuant to Chapter 119 of the Ohio Revised Code, you are hereby advised that you are entitled to a hearing in this matter. If you wish to request such a hearing, the request *must be made in writing and must be received* in the offices of the Ohio Department of Education within thirty days of the date of mailing of this notice. * * * Pursuant to Ohio Administrative Code 3301-73-05, in the event that you do not request a hearing within thirty days of the date of mailing of this notice, the State Board of Education may, in your absence and upon consideration of this matter, determine whether or not to limit, suspend, revoke, or permanently revoke your permanent kindergarten through elementary teaching certificate issued in 1986. (Emphasis added.)

**{¶14}** Even a cursory reading of the Department's notice to McClendon demonstrates that the notice satisfied the due process requirements for effective notice. In addition to informing McClendon of the charges against her and her right to a hearing, the notice clearly informed her that her request for a hearing must be in writing and, further, that it must be received in the Department's office within 30 days of the date of mailing of the notice. Such notice is constitutionally adequate. *Davidson v. State Med. Bd.*, 10th Dist. Franklin No. 97APE08-1036, 1998 Ohio App. LEXIS 2104 (May 7, 1998) (doctor was given constitutionally effective notice where the notice informed him that the medical board could proceed in his absence "in the event that there is no request for such hearing received within 30 days of the time of mailing of this notice").

McClendon's argument that the notice did not adequately inform her of what she must do to request a hearing is without merit.

**{¶15}** McClendon insists the notice is defective, however, because it did not mention the "added requirements" for filing a request for a hearing set forth in Ohio Adm. Code 3301-73-06(A), which provides that "[a] hearing request is filed when it is received and time-stamped by the department." McClendon contends that the notice did not inform her that her request had to be "filed" with the Department, and contained no notification of what the process for time-stamping involves. This argument fails because there was no requirement that McClendon "file" her request with the Department. As set forth in the Department's December 12, 2013 notice to McClendon, to be effective, McClendon's request needed only to be in writing and received by the Department within 30 days of the mailing of the notice.

**{¶16}** Despite McClendon's assertions otherwise, the record evidence conclusively demonstrates that McClendon's request was not timely because the Department did not receive her request within 30 days of the date of the mailing of the notice. The Department's notice is dated December 12, 2013. The mail tracking receipt shows that the postal service processed the Department's notice on December 13, 2013, and McClendon received the notice on December 17, 2013. Using December 13, 2013 as the "time of mailing the notice" under R.C. 119.07, the Department had to receive McClendon's hearing request within 30 days of that date, i.e. by January 12, 2014. The evidence demonstrates that McClendon mailed her request to the Department on January

13, 2014, and that the Department did not receive it until January 16, 2014, clearly not within the 30-day time limit established by R.C. 119.07.

{¶17} McClendon argues that her request was timely, however, because she "submitted" her request for a hearing on January 13, 2014, when she mailed it. For a written request to be timely, however, it must be *received* by the Department within the 30-day period. *Hsueh v. State*, 10th Dist. Franklin No. 88AP-276, 1989 Ohio App. LEXIS 3977 (Oct. 17, 1989), *5, citing *Alcover v. Ohio State Med. Bd.*, 8th Dist. Cuyahoga No. 54292, 1987 Ohio App. LEXIS 9961 (Dec. 10, 1987). The "mere act of placing such a request in the mail within the thirty-day period does not constitute compliance with the requirements of R.C. 119.07." *Hsueh* at *5.

{¶18} McClendon next asserts that even if her written request was not timely, she should have been granted a hearing because she made a timely oral request for a hearing. McClendon admits, however, that the record contains no evidence whatsoever that she ever orally requested a hearing. Thus, her claim is totally without merit.

{¶19} Moreover, this court has held that where an appellant has been instructed to submit a written request for a hearing, an oral request is not sufficient. In *Alcover*, *supra*, the appellant doctor argued that her oral request for a hearing was sufficient to put the agency on notice that she wanted a hearing. *Id*. at *9. This court disagreed, finding that the doctor had been informed that her request should be in writing. *Id.* This court found that because the doctor had not sent a timely written request for hearing, no timely request had been made, and the doctor was therefore not entitled to a hearing. *Id.* Like

in *Alcover*, the Department's notice instructed McClendon that her request for a hearing must be in writing. Because she did not send a timely written request for hearing as instructed, any oral request would have been insufficient.

{¶20} Finally, McClendon cites Ohio Adm.Code 3301-73-06(H) to argue that the Board has discretion and could have allowed her to participate in a hearing even though she did not make a timely request. That section states that "[i]f a document is not filed in accordance with this rule, the state board or hearing officer may, at his/her discretion, accept the document upon establishment of proof of good faith." McClendon's citation ignores subsection (B) of this rule, however, which states that the rule applies only to documents filed *after* a request for an administrative hearing is received.

{¶21} Furthermore, as this court made clear in *Alcover*, "[t]he procedure for obtaining a hearing before an administrative agency is not subject to discretion of the agency, but is set forth in R.C. 119.07 * * *." *Alcover*, 1987 Ohio App. LEXIS at *9. *See also Kellough v. Ohio State Bd. of Edn.*, 10th Dist. Franklin No. 10AP-419, 2011-Ohio-431, ¶ 43-44. Thus, the Board had no discretion to allow McClendon to participate in the hearing when she failed to make a timely request in accord with the requirements of R.C. 119.07.

{¶22} The Board's notice to McClendon of her right to request a hearing comported with the requirements of due process. Because McClendon's request was not received by the Department within 30 days of the date of mailing the notice, the request

was not timely and, therefore, the Board properly denied McClendon a right to participate in the hearing. The second assignment of error is overruled.

## C. Reliable, Probative, and Substantial Evidence

**{¶23}** In her first assignment of error, McClendon contends that the trial court abused its discretion in affirming the Board's decision that she failed to appropriately supervise Student 1 on May 16, 2012.

**{¶24}** The certified record contains the transcript of the hearing before the hearing officer regarding the allegations in the notice sent to McClendon. Three witnesses, including Student 1's foster mother and the assistant principal at Student 1's school during the 2011-2012 school year, testified at the hearing, and ten exhibits were admitted. The testimony and exhibits demonstrated the following.

**{¶25}** During the 2011-2012 school year, McClendon, who was 66 years of age and had 38 years of teaching experience, was employed as a kindergarten teacher at Franklin D. Roosevelt Academy ("FDR") in the Cleveland Metropolitan School District.

**{¶26}** McClendon was also employed to teach an after-school tutoring program, which lasted for approximately two hours and had approximately 30 eighth-grade students in the program. The kindergarten program at FDR during the 2011-2012 school year was an all-day kindergarten. The school day at FDR ended at 2:30 p.m. for all students.

**{¶27}** FDR had a policy that required parents, guardians, or designated caregivers to sign out kindergarten students before the student could be released from school at the

end of the school day. Kindergarten teachers were responsible for ensuring that their students were signed out.

**{¶28}** FDR also had a policy that if a parent, guardian, or designated caregiver did not pick up a student at the end of the school day, the teacher was to bring the student to the school office and alert the office personnel. If the teacher chose not to take a student to the school office, the student remained the teacher's responsibility. These policies were communicated to teachers through verbal instructions from the administrative staff, teacher in-service trainings, and the school handbook. McClendon was aware of these policies.

**{¶29}** Student 1, who was five years old, was in McClendon's kindergarten class. He had been placed with foster parent Danielle McCord in May 2012, and shortly thereafter enrolled at FDR. As a five-year-old and new student, Student 1 was not familiar with the neighborhood of his new school and residence.

**{¶30}** McCord was unable to pick up Student 1 from school at 2:30 p.m. every day due to her work schedule, so she informed McClendon and one of FDR's assistant principals that her niece or nephews, who were middle school students at FDR, would sign out Student 1 every day and wait for her to pick them up from school.

**{¶31}** On May 16, 2012, McClendon notified the school office that Student 1 had not been picked up after school by his guardian or designated caregivers. She did not leave Student 1 in the school office, but allowed him to accompany her and the other students in the after-school program to the school computer lab. At some point during

the after-school tutoring session, McClendon noticed that Student 1 was no longer with the group. She inquired if any of the other students in the after-school program knew of Student 1's whereabouts and then returned to her kindergarten classroom. Student 1 was not there. When she could not locate him, McClendon assumed that Student 1's guardian or designated caregivers had picked him up. McClendon did not take any other steps to look for Student 1 or to ascertain his whereabouts, and did not advise school personnel that Student 1 was gone but had not been signed out as required by school policy.

{¶32} At approximately 4 p.m. on May 16, 2012, Danielle McCord, Student 1's foster mother, drove to FDR to pick up her niece and Student 1. When she arrived, she found only her niece waiting outside the building. McCord's niece said she had gone to Student 1's classroom after school but could not find him. After checking the kindergarten classroom, McCord went to the school office but did not locate either the principal or Student 1 in the office.

{¶33} Concerned that Student 1 might be outside the school building, McCord drove around the school grounds in the direction of her residence to look for him. She found Student 1 walking alone several blocks away from FDR, trying to cross a busy street. McCord stopped her car in the middle of traffic to retrieve him.

{¶34} McCord then returned to FDR and spoke with the school principal, the assistant principal, and McClendon in the school office. According to McCord, the principal told McClendon that she had taken responsibility for Student 1 when she had

included him in her after-school group and, therefore, she was responsible for him until he was transferred to a parent, guardian, or designated caregiver. McClendon openly argued with the principal during the meeting, however, and maintained that she was not responsible for Student 1 because he was not enrolled in her after-school program. According to McCord, McClendon "threw her hands up at the principal, [said] I can't believe this, and walked off." The principal told McClendon that the school district would conduct an investigation into the incident but no investigation was ever conducted.

{¶35} McCord subsequently informed Student 1's social worker about the incident, and in May and June 2012, the Cuyahoga County Department of Children and Family Services ("CCDCFS") conducted an investigation into the incident. During CCDCFS's interview with McClendon, McClendon maintained that she was not responsible for Student 1 on May 16, 2012, because he was not registered for her after-school tutoring program. Instead, she asserted that McCord was at fault for not timely picking up Student 1 after school.

{¶36} As part of its investigation, CCDCFS also interviewed FDR's school principal, who stated that according to school policy, teachers are responsible for their students throughout the day until the students are handed off to a parent, guardian, or other caregiver. The principal explained that in the event students are not picked up, teachers are to bring the student to the school office and inform office personnel, who then take responsibility for the student. The principal stated that McClendon was aware of the strict sign-in/sign-out policy and did not comply with the policy on May 16, 2012,

in the incident involving Student 1. CCDCFS subsequently found that the allegations of child neglect against McClendon relating to the incident were substantiated.

{¶37} In light of this evidence, the trial court did not abuse its discretion in finding that the Board's decision that McClendon had engaged in conduct unbecoming to her profession was supported by reliable, probative, and substantial evidence. Ohio Adm.Code 3301-73-21 provides eight non-exhaustive factors for the Board to consider when evaluating alleged instances of conduct unbecoming to the teaching profession. The Board found that three of those factors applied in this case: misconduct involving minors, misconduct involving school children, and misconduct that negatively reflects upon the teaching profession. The evidence that McClendon left a five-year-old kindergarten student unattended, which resulted in his walking alone in the community, trying to cross a busy street by himself, supports those conclusions.

{¶38} McClendon contends that the evidence is not reliable or probative, however, because there were some contradictions in the evidence. For example, McCord had difficulty remembering what time she arrived at FDR on May 16, 2012, and gave differing accounts to the hearing officer and CCDCFS regarding whether she spoke with her niece and nephews about their attempts to locate Student 1 that day. But the Board's finding that McClendon failed to supervise Student 1 on May 16, 2012, is not dependent upon what time McCord arrived at school or the conversations she had with her niece and nephews; it was dependent upon the record evidence that showed that McClendon assumed responsibility for Student 1 after school when she took him with her to her

after-school tutoring program because he had not been signed out by anyone, but then failed to ensure his safety and welfare when she discovered that he was gone from the class.

**{¶39}** With respect to McClendon's assertions that the evidence is not probative because school administrators gave conflicting accounts regarding where Student 1 was from 2:30 p.m. to 4:30 p.m. that day, the record reflects that the assistant principal testified that although Student 1 was in the office soon after school was dismissed, he left the office with McClendon. Moreover, in her interview with CCDCFS, McClendon admitted that Student 1 was with her after school in her after-school tutoring program. Thus, there is no evidence other than that McClendon took control over supervising Student 1 after school on May 16, 2012.

**{¶40}** McClendon also contends that the evidence is not probative because the Cleveland school district failed to conduct an investigation into the incident. The district's lack of an internal investigation, however, does not determine that McClendon did not violate R.C. 3319.31(B)(1) on May 16, 2012. The Board is an independent regulatory agency, and its decision is not related to any investigation by the school district, other than to the extent that the Board could consider the result of the district's investigation in determining what sanction to impose. *See* Ohio Adm.Code 3301-73-21(B)(12) (listing as a factor in determining a final action whether the school district imposed any penalties, sanctions, or other conditions addressing the educator's conduct). Notably, the evidence reflected that CCDCFS, an independent agency, conducted an investigation and

concluded that McClendon's failure to adequately supervise Student 1 on May 16, 2012, was child neglect. Moreover, the district's lack of an investigation is likely explained by the fact that on April 4, 2012, a month before the incident, McClendon had submitted her notice of retirement to be effective July 1, 2012. It is likely the district found no use in beginning the disciplinary process because McClendon was set to retire.

{¶41} McClendon also asserts that the evidence was not probative because Student 1 was returned to her classroom for the remainder of the school year. She makes no argument why this fact is dispositive, but we presume she means to argue that apparently school administrators and McCord trusted her judgment regarding Student 1 even after the incident of May 16, 2012. Even if true, that does not change the evidence regarding McClendon's lack of responsibility for Student 1 on May 16, 2012, and her refusal to accept responsibility for the incident.

{¶42} Lastly, McClendon argues that the evidence was not probative because the CCDCFS report that the hearing officer cited to contained statements from the social worker's interview of Dr. Bridget Isaac, the FDR principal in 2011-2012. McClendon contends that Dr. Isaac's statements about the incident were unreliable because they were hearsay and contradicted by the assistant principal's testimony at the hearing.

{¶43} The rules of evidence do not bind administrative agencies. *Bd. of Edn. for Orange City School Dist. v. Cuyahoga Cty. Bd. of Revision*, 74 Ohio St.3d 415, 417, 659 N.E.2d 1223 (1996). Hearsay is admissible in administrative hearings, and it can

constitute reliable, probative, and substantial evidence. *Westlake v. Ohio Dept. of Agriculture*, 10th Dist. Franklin No. 08AP-71, 2008-Ohio-4422, ¶ 19.

**{¶44}** McClendon contends that Dr. Isaac told the social worker that Student 1 was not in the school office after school that day so his caregiver could not be alerted. She characterizes this statement as a "lie" because the assistant principal testified at the hearing that Student 1 was in the office that day, and the school secretaries tried calling McCord three or four times. But McClendon admitted that she took Student 1 with her to her after-school program that day. Thus, Dr. Isaac's statement that Student 1 was not in the school office after school that day was obviously true; at some point, he left the office with McClendon. Furthermore, Dr. Isaac may simply have not been aware that the school secretaries tried to call McCord that afternoon. That would hardly make her statement a lie.

**{¶45}** McClendon's reference to Dr. Isaac's statements contained in the CCDCFS report is curious: on the one hand, she asserts that Dr. Isaac is not to be believed because she allegedly "lied" about Student 1's whereabouts after school on May 16, 2012; on the other hand, she asserts that Dr. Isaac made complimentary statements about her teaching ability to the CCDCFS social worker that the hearing officer and Board should have relied upon in deciding the sanction. In any event, the assistant principal's testimony at the hearing bolstered Dr. Isaac's statements in the CCDCFS report about Student 1's whereabouts after school on May 16, 2012, and that McClendon was responsible for him at the end of day.

{¶46} The record reflects that there was reliable, probative, and substantial evidence to support the Board's resolution. Accordingly, the trial court did not abuse its discretion in affirming the Board's decision. The first assignment of error is therefore overruled.

## D. Revocation of McClendon's License

{¶47} In her third assignment of error, McClendon asserts that the trial court abused its discretion in affirming the Board's decision to permanently revoke her teaching license because the Board ignored the disciplinary guidelines in the licensure code of professional conduct for Ohio educators. She contends that the code does not allow permanent revocation of an educator's license for disciplinary actions involving inappropriate supervision of a student, but the Board disregarded the guidelines and imposed an excessive punishment. This argument is likewise without merit.

{¶48} As noted by the hearing officer in her written report and recommendation, in determining appropriate sanctions, the Board may take into account the mitigating and aggravating factors set forth in Ohio Adm.Code 3301-73-21(B). The hearing officer found that the aggravating factors set forth in Ohio Adm.Code 3301-73-21(B)(1), (3), and (10) applied: (1) the seriousness of McClendon's conduct, in that her failure to provide appropriate supervision to the student could have resulted in serious harm to the student; (2) McClendon's age, in that she had sufficient maturity and teaching experience to comprehend her responsibility for the safety and welfare of all students, and for following school policies and procedures for maintaining accountability for the children in her

charge; and (3) the fact that McClendon did not take responsibility for the student during the incident or afterward when asked about it.

{¶49} The hearing officer recommended that McClendon's license be revoked as a result of the incident. She then noted that although the Board may establish a minimum period of time before an applicant can apply for a new license, under Ohio Adm. Code 3301-73-22(A)(2)(b), the Board may also order that one whose license has been revoked is permanently ineligible to apply for any license issued by the Board. She found that although the disciplinary guidelines in the licensure code range from a suspension of one day to five years for disciplinary actions involving inappropriate supervision of a student, the Board has the authority to determine that a penalty outside the range of disciplinary guidelines is more appropriate in an individual case based upon the aggravating and mitigating factors set forth in Ohio Adm. Code 3301-73-21(A) and (B). In light of the three aggravating factors applicable to this case, the hearing officer recommended that McClendon be permanently ineligible to apply for any license issued by the Board.

{¶50} The hearing officer found that McClendon was responsible for the student because she had physical custody of him, and was the only person who would have known that no one had signed the student out to leave the school building. The hearing officer further found that McClendon did not follow school policies by first, not verifying that the student was signed out to leave the building, and then, after learning that the student was gone from her class, not alerting anyone that he was gone or taking any steps to find him. The hearing officer further found that even after McClendon learned that

the student had been found walking alone in an unfamiliar neighborhood and trying to cross a busy street by himself, she "did not express concern for his safety or well-being, either on the day of the incident or during the subsequent interview by Children's Services." Finally, the hearing officer found that in light of McClendon's failure to accept responsibility, there was no evidence that such an incident involving McClendon would not happen again. Accordingly, the hearing officer recommended that in addition to revoking McClendon's license, the Board order her permanently ineligible to apply for any license issued by the Board.

{¶51} In light of the hearing officer's findings and recommendation, it is apparent that neither the hearing officer nor the Board "purposely ignored" the disciplinary guidelines. Although the penalty is admittedly harsh, the hearing officer found aggravating factors that substantiated her recommendation that McClendon be permanently ineligible to apply for an educator's license.

{¶52} The Board's enabling statutes provide that the Board has the discretionary authority to sanction and to make rules to carry out those sanctions. And although the code provides an advisory or presumptive range of disciplinary action for inappropriate supervision of a student, the Board retains discretion to impose whatever sanction it deems appropriate. *Haynam*, 6th Dist. Lucas No. L-1101100, 2011 Ohio-6499 at ¶ 88 (the degree of sanction is for the Board to determine). Accordingly, the Board had the authority to revoke McClendon's license and find her permanently ineligible to reapply for any future license. *See* R.C. 3319.31(B) and (G).

**{¶53}** McClendon asserts that the punishment was "particularly egregious" because she was "wrongfully denied" an opportunity to participate in the hearing before the hearing officer who recommended the punishment, and if she had participated, she could have presented evidence of her unblemished record and her excellent work as an educator. But as discussed above, McClendon was not wrongfully denied an opportunity to participate in the hearing. If she had wanted to present mitigating evidence, she should have taken the appropriate steps to procure a hearing. *See Jain v. Ohio State Med. Bd.*, 10th Dist. Franklin No. 09AP-1180, 2010-Ohio-2855, ¶ 20. The third assignment of error is therefore overruled.

**E. Failure to Timely File a Complete Administrative Record**

**{¶54}** R.C. 119.12 requires that within 30 days after receipt of a notice of appeal, an administrative agency shall prepare and certify to the court a complete record of the proceedings in the case. In her fourth assignment of error, McClendon argues that the Department violated R.C. 119.12 because although the record was timely certified, the Department waited to file the CCDCFS report until after the trial court granted the Department's motion to file the document under seal, and it filed the minutes of the Board's November 11, 2014 meeting after the 30-day period. This argument is without merit.

**{¶55}** R.C. 119.12 provides that the court may grant additional time to file the record, not to exceed 30 days, when it is shown that the agency has made a substantial effort to comply with its obligations to timely file the administrative record.

Additionally, where the administrative agency timely certifies its administrative record to the court of common pleas but there is an unintentional error or omission in an otherwise complete record, the party appealing the administrative action pursuant to R.C. 119.12 is not entitled to judgment in his or her favor absent a showing of prejudice. *Gwinn v. Ohio Elections Comm.*, 187 Ohio App.3d 742, 2010-Ohio-1587, 933 N.E.2d 1112 (10th Dist.), citing *Arlow v. Ohio Rehab. Servs. Comm.*, 24 Ohio St.3d 153, 155, 493 N.E.2d 1337 (1986).

{¶56} As McClendon concedes, the Department timely filed the certified record on December 31, 2014. Before filing the record, the Department moved on December 16, 2014, for the trial court to allow it to file the CCDCFS report under seal because such reports are confidential under R.C. 2151.421. On January 6, 2015, the court granted the Department's motion, and on January 8, 2015, the Department filed the report under seal. It is within the trial court's discretion to allow the agency to supplement the record; we find no abuse of discretion in allowing the Department to file a confidential report under seal a few days after the 30-day deadline for filing the certified record.

{¶57} With respect to the minutes of the Board's November 11, 2014 meeting, the minutes did not exist in final form on December 31, 2014, when the Board timely filed the certified record. It is axiomatic that a document cannot be filed until it exists. The record reflects that when the minutes became available on January 21, 2015, the Department supplemented the record.

{¶58} McClendon makes no argument whatsoever that she was prejudiced by the Department's supplementation of the record, presumably because she cannot do so. "[P]rejudice deals with an impediment to presenting a claim under review." *Ohio Div. of Real Estate v. Knight*, 8th Dist. Cuyahoga No. 98160, 2013-Ohio-2895, ¶ 18. Here, the CCDCFS report was available to McClendon at the time she filed her brief, and she relied upon it in her brief. Thus, there was no impediment to presenting her argument on appeal. The Board's meeting minutes merely reflect the Board's approval of its resolution sanctioning McClendon's license, and that information was available to McClendon through other parts of the record. Thus, the absence of the meeting minutes did not present an impediment to her claim in the trial court.

{¶59} Finally, McClendon contends that the Department should have included recent documents praising her performance in her personnel file. But the Department had no duty to do so. If McClendon had wanted documents included in the record, she should have taken the appropriate steps to request a hearing at which the documents could have been presented. Nevertheless, the trial court granted McClendon's request to include the documents in the record. Thus, there was no prejudice to McClendon, and the fourth assignment of error is overruled.

{¶60} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

PATRICIA ANN BLACKMON, J., CONCURS;
ANITA LASTER MAYS, J., DISSENTS
(SEE SEPARATE OPINION)

ANITA LASTER MAYS, J., DISSENTING:

**{¶61}** I respectfully dissent. As the majority stated, the appellant's second assignment of error should be addressed first because a denial of due process would be dispositive of appellant's appeal. I would find that the appellant was denied due process of law when she was denied participation in the hearing that terminated her teaching license. I agree that the appellant had 30 days to respond to the Department of Education's ("ODE") letter requesting an appeal. ODE's letter was mailed to the appellant on December 13, 2013, which appellant received December 17, 2013. Appellant had until January 12, 2014, to mail her letter to ODE requesting a hearing. The appellant, instead, mailed her letter on January 13, 2014. January 12, 2014, is the 30th day, however that day was a Sunday. According to R.C. 1.14,

The time within which an act is required by law to be done shall be computed by excluding the first and including the last day; except that, when the last day falls on

Sunday or a legal holiday, the act may be done on the next succeeding day that is not Sunday or a legal holiday.

{¶62} Therefore, since the 30th day fell on a Sunday, according to the statute, that day cannot be counted as the last day. Instead, Monday, January 13, 2014, should be counted as the 30th day. *See Coon v. Tech. Constr. Specialties, Inc.*, 9th Dist. Summit No. 24542, 2010-Ohio-417, ¶ 14 (although the notice was received on the 91st day after the employee's discharge, the 90th day was a Sunday. Therefore, the employee had until Monday to ensure his employer received notice). *See also Rea v. Helsley*, 86 Ohio App. 114, 90 N.E.2d 168 (10th Dist.1949) (there is sufficient basis for a determination that defendant made reasonable effort to tender a check for such installment, by special delivery letter on the Monday following Sunday, the due date, such attempt constitutes a sufficient compliance with the term for payment, under provisions of this section, requiring the exclusion of Sunday in the computation of time when the last day falls on Sunday).

{¶63} The majority and ODE has relied on R.C. 119.07 to support their decision that appellant was not in compliance with the 30-day time frame to file for a hearing. The statute states:

Except when a statute prescribes a notice and the persons to whom it shall be given, in all cases in which section 119.06 of the Revised Code requires an agency to afford an opportunity for a hearing prior to the issuance of an order, the agency shall give notice to the party informing the party of the party's right to a hearing. Notice shall be given by registered mail, return receipt requested, and shall include the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that the party is entitled to a hearing if the party requests it within thirty days of the time of mailing the notice. The notice shall also inform the party that at the hearing the party may appear in person, by the party's attorney, or by such other representative as is

permitted to practice before the agency, or may present the party's position, arguments, or contentions in writing and that at the hearing the party may present evidence and examine witnesses appearing for and against the party.

{¶64} The notice provided to the appellant by ODE states:

Pursuant to Chapter 119 of the Ohio Revised Code, you are hereby advised that you are entitled to a hearing in this matter. If you wish to request such a hearing, the request must be made in writing and received in the office of the Ohio Department of Education within thirty days of the date of mailing of this notice. * * * Pursuant to Ohio Administrative Code 3301-73-05, in the event that you do not request a hearing within thirty days of the date of mailing of this notice, the State Board of Education may, in your absence and upon consideration of this matter, determine whether or not to limit, suspend, revoke, or permanently revoke your permanent kindergarten through elementary teaching certificate issued in 1986. (Emphasis added.)

{¶65} ODE's notice is not in compliance with R.C. 119.07 as it reads. R.C. 119.07 does not discuss when the request for a hearing is received, but rather when it is requested. Specifically it states, "the party is entitled to a hearing if the party requests it within thirty days of the time of mailing the notice." The statute does not state that the request for a hearing must be received in the office of ODE within 30 days. The majority has cited two cases from the Tenth District that agreed with its assertion that effective notice for a hearing must be received within 30 days. However, I disagree with the Tenth District because their analysis is incongruent with what R.C. 119.07 actually states.

{¶66} In addition, ODE argues that appellant had 30 days to request a hearing from the date of their notice. The tracking receipt shows that the notice was processed on December 13, 2013, and the appellant received it on December 17, 2013. The appellant had 30 days from December 13th to respond to the notice, not the date of when she

received it. However, if we read the statute as the majority and the Tenth District would like for us to, then the appellant does not get the benefit of 30 days, but instead 30 minus however long it takes for the appellant to receive the notice. ODE is permitted to use a tracking receipt for its calculation of days, but the appellant is not. This is inequitable and goes against the very heart of due process. ODE should not be allowed to use the date of mailing if the appellant is not, especially when the statute does not state anything about receipt of the request, but rather when the request was made.

{¶67} The appellant made her request within 30 days as permitted by statute. Because the appellant mailed her letter requesting a hearing on the 31st day, but after a Sunday, I find that the Monday is the 30th day, and the appellant was in compliance with the rule. Therefore, the appellant's due process rights were violated when she was denied participation in the hearing that resulted in the revocation of her teaching license.